### RICHMOND GUANO CO. v. LONG et al.

(Circuit Court of Appeals, Fourth Circuit. May 2, 1916.)

No. 1416.

1. SALES ☞52(6)—ACTIONS—EVIDENCE—SUFFICIENCY.

In a suit for the purchase price of fertilizers delivered to defendant corporation, evidence *held* insufficient to show that the individual defendants became individually liable, or liable as copartners.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 138; Dec. Dig. ☞52(6).]

2. TRUSTS ☞30½(1)—CREATION—MODE OF CREATION.

Where the individual defendants, after the corporate purchaser of fertilizers was in failing circumstances, took over collateral delivered to plaintiff, which the corporation had agreed to collect, agreeing to collect it themselves, the individual defendants became trustees, and therefore are liable for the proceeds of collateral for which they did not account.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 41; Dec. Dig. ☞30½(1).]

3. SALES ☞17—PERSONS BOUND.

Except in case of fraud or mistake, the courts will rarely infer from circumstances that the obligation of a contract of sale was assumed by one not a party to it, when the question of liability of such person could have been settled at the inception of the contract by an execution thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 26-30; Dec. Dig. ☞17.]

Appeal from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Suit by the Richmond Guano Company, a corporation, against J. M. Long and W. S. Mauldin, each individually and as partners doing business as Long & Mauldin, the W. D. Spearman Company, a corpora-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion, and another. From a judgment denying part of the relief sought, complainant appeals. Affirmed.

The opinion of Smith, District Judge, referred to, is as follows:

On July 25, 1914, the bill was filed in this cause against the defendants for an accounting, and to hold them liable for the failure to account for certain fertilizers shipped by the complainants to the defendant W. D. Spearman Company. The defendants answered, and the case was referred to J. J. Mc-Swain, Esq., as special master, to take the testimony and accounting and report to the court, with leave to report his conclusions of fact upon the testimony. The special master has taken the testimony and reported, and exceptions have been filed to his report by both complainant and defendants. The cause has now come on to be heard upon the pleadings, the testimony, the report of the special master, and the exception thereto, and has been duly heard; counsel on both sides having been heard.

It appears that in December, 1908, the corporation known as the W. D. Spearman Company was engaged in a general mercantile and fertilizer business, in which corporation the defendants W. D. Spearman, W. S. Mauldin, and J. M. Long were all stockholders, and W. D. Spearman and W. S. Mauldin were directors; W. D. Spearman being the president, and W. S. Mauldin secretary of the company. Prior to that time the defendants W. S. Mauldin and J. M. Long appear to have been engaged in the business of buying and selling fertilizers under the firm of Long & Mauldin, but there is no evidence that they were so doing after their connection with the W. D. Spearman Company. On December 28, 1908, the complainant, through one of its agents, proposed to W. D. Spearman Company to furnish fertilizers at the prices named in the proposal; the said proposal containing the provision that the proposal, when accepted by the W. D. Spearman Company, should not become a binding contract between the plaintiff and W. D. Spearman Company until the complainant had accepted the same. The W. D. Spearman Company on December 28, 1908, accepted the said offer in writing, but the complainant appeared to be unwilling to accept the offer, apparently from an unwillingness to rely upon the financial responsibility of the W. D. Spearman Company, and some correspondence ensued, and on January 19, 1909, the defendant W. S. Mauldin, who was the secretary of the W. D. Spearman Company, wrote a personal letter to the complainant, in which he stated that they were mailing under a separate cover an official statement of W. D. Spearman Company, adding: "I will say for your information that the store and fertilizer will have separate account. They will not take any joint notes. You will get the collateral notes that your guano is sold for. Mr. Spearman has management of the store and I have management of the fertilizer business. We will have separate bank account. We propose to furnish you with the collateral that we sell your fertilizers for. And under our conservative way of putting out fertilizers I don't see as you could possibly sustain a loss under this contract."

To this letter the complainant answered on January 21, 1909, in a letter to W. S. Mauldin individually, saying that they had his letter "in reference to the W. D. Spearman Company's contract, and as you are going to handle this fertilizer business separately and distinctly yourself, and give us the collateral notes properly, beg to say it gives me pleasure to accept the contract, which I have just done." The contract, however, was made with W. D. Spearman Company alone. W. S. Mauldin was the secretary of that company, and while the correspondence would appear to indicate that he appealed to the complainant to confirm the contract with W. D. Spearman Company, suggesting as a persuasive reason that he (Mauldin, with whom the complainant apparently had had previous business transactions) was going to handle the fertilizer part of the business of W. D. Spearman Company, and that, as the complainant would receive as collateral notes of the purchasers of the fertilizers from W. D. Spearman Company, properly indorsed by W. D. Spearman Company, he thought they would not lose. This, however, was no undertaking personally to guarantee the payment of the debts of W. D. Spearman Company. It was simply a statement offered by way of persuasion that he (Mauldin, who was the secretary of the Company) would have the personal looking after of the fertilizer part of the business, and that as complainant

would receive, as collateral for the amounts due it on the shipment of fertilizers, the collateral notes given by the purchasers of fertilizers, he did not see how they could lose.

[1] The complainant shipped the fertilizers to the W. D. Spearman Company. It charged the W. D. Spearman on its own books with the cost of the fertilizers. It made no entry showing it gave credit to or relied upon Mauldin, and when later, on the 15th of May, 1909, notes were given to the complainant in payment for the fertilizers at the agreed prices, the notes given were the notes of W. D. Spearman Company, and no indorsement by Long or Mauldin was either demanded or received. It is found, therefore, as a conclusion of law, that there was no promise or guaranty or undertaking on the part of W. S. Mauldin or J. M. Long, defendants, personally to pay for the fertilizers shipped to the W. D. Spearman Company, but that the complainant sold its fertilizers upon the credit of W. D. Spearman Company alone, trusting to the active management for that company of its fertilizer business by W. S. Mauldin, in addition to the collateral notes it would receive.

Nor does it appear, as argued for complainant, that the agreement for compensation between the W. D. Spearman Company and the defendants Long and Mauldin constituted the two latter copartners with W. D. Spearman Company in the fertilizer business, so as to render them liable as copartners with W. D. Spearman Company for the debts of that concern. The testimony is not clear, but it appears that for looking after the fertilizer business of W. D. Spearman Company the defendants J. M. Long and W. S. Mauldin were each to receive $100 per month, to be paid out of the profits of the fertilizer business, and then the balance of such profits was to be a part of the general assets of W. D. Spearman Company. Any share in the balance of the profits outside of their fixed monthly compensation could only be had by Long and Mauldin in like manner as other stockholders in W. D. Spearman Company, by a dividend on their stock. The testimony is not even clear that their monthly compensation was to come out of the "profits" of the fertilizer business. It seems to have been considered that profits were certain, and that really what was meant was that the fertilizer side or department of the business of W. D. Spearman Company was to bear as part of its expenses the payment of the monthly compensation of the two defendants, J. M. Long and W. S. Mauldin. In this light the compensation to Mauldin and Long was a fixed compensation to them as employés of W. D. Spearman Company for looking after the fertilizer business. It is accordingly held that there was no copartnership existing such as would make the defendants Mauldin and Long liable to the complainant for the debts due by W. D. Spearman Company for the fertilizers shipped under the contract.

[2] The next and main question is as to the liability of the defendants for the collections made from the collaterals of the complainant in their hands. The total amount of fertilizers shipped aggregated, according to the agreed prices under the proposal, the sum of $13,020.53, and on or about the 15th day of May, 1909, a settlement was had between the plaintiff and the defendant W. D. Spearman Company, whereby the plaintiff accepted from W. D. Spearman Company, as representing the amount due by W. D. Spearman Company on the shipment of fertilizers, four notes, all dated May 15, 1909, and aggregating the sum of $13,020.53. To secure these notes W. D. Spearman Company delivered and assigned to the complainant notes, mortgages, and open accounts of purchasers of fertilizers from W. D. Spearman Company to the aggregate of $13,040.09, as being the collateral to be transferred to the complainant under the contract as representing the obligations given by the purchasers of the fertilizers from W. D. Spearman Company. This amount was accepted upon the settlement in May by the complainant as being the collateral to which it was entitled under the agreement, and the court holds that on the facts as a conclusion of law that the complainant, in the absence of fraud, is bound by that settlement as showing its acceptance of the amount of collateral that it was entitled to receive under its agreement with W. D. Spearman Company. All this collateral was returned to W. D. Spearman Company for the purpose of collection; the proceeds of this collateral, and the collateral, to be held by W. D. Spearman Company in trust for the complainant,

to which the proceeds of all collections were to be paid, W. D. Spearman Company having undertaken that collection.

W. D. Spearman Company becoming financially embarrassed, and it being apparently desired by all parties that the fertilizer accounts should not become involved in the mercantile business, the defendants J. M. Long and W. S. Mauldin, on November 6, 1909, gave an acknowledgment to the plaintiff that all the collateral notes and accounts were in the hands of said Long and Mauldin to be collected for the account of the plaintiff. This substituted the defendants J. M. Long and W. S. Mauldin as the trustees to collect these accounts for the complainant, and to turn the same over to the complainant; they assuming in that respect the obligations that had theretofore rested upon W. D. Spearman Company under the agreement to collect these collateral obligations as trustees for the complainant. On this total amount of $13,040.09 it appears that there has been paid out of the collections $10,321.83. It appears further from the testimony that the defendants Long and Mauldin have produced as ready to deliver to the complainant and accounted for of these collaterals, which they have been unable to collect, $1,640.03, making a total of $11,961.86 so accounted for. The difference between this amount of $11,961.86 and the total collateral in the hands of W. D. Spearman Company and Long and Mauldin for collection of $13,040.09 is $1,078.23, for which the defendants Long and Mauldin have wholly failed to account in this case.

It is thereupon adjudged and decreed that the defendants J. M. Long and W. S. Mauldin are indebted to the complainant in the sum of $1,078.23, with interest at the rate of 7 per cent. per annum from the 6th of November, 1909, and that upon failure of the said defendants J. M. Long and W. S. Mauldin jointly or severally to pay the same, together with the costs of these proceedings, within 30 days from the date of this order, the complainant may enter up judgment against the said defendants for the amount thereof, and issue execution thereon or enforce the same as it may be otherwise entitled to do under the rules and practice of this court. Nothing herein to be construed however to affect the liability of the defendant W. D. Spearman Company upon its note referred to and set out in the bill of complaint, as to which application may be made at the foot of this decree for any order in regard thereto to which the complainant may be entitled.

Ernest F. Cochran, of Anderson, S. C., and Julius H. Heyward, of Greenville, S. C. (J. W. Quattlebaum, of Anderson, S. C., on the brief), for appellant.

H. H. Watkins, of Anderson, S. C. (M. L. Bonham and T. Allen, both of Anderson, S. C., and J. P. Carey, of Pickens, S. C., on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

WOODS, Circuit Judge. The material facts are set out in the opinion of the District Judge, and the principles of law applicable to them are well settled. Little need be added to the clear and convincing reasoning of the District Judge. It cannot be denied that there is both direct and positive evidence strongly supporting the conclusion of the court (1) that the contract to purchase fertilizer from complainant was made with W. D. Spearman Company, and not with defendants individually; (2) that the defendants were not partners, and did not hold themselves out as partners, with W. D. Spearman Company, but were employés or agents, whose compensation was fixed at $100 a month, payable from the anticipated profits of the business; and (3) that the defendants did not afterwards in the course of the business in any way assume the obligations of the Spearman Company.

[3] The complainant is a large wholesale dealer in fertilizer. Had its officers intended to hold the defendants, either as principals, or guarantors, or sureties, on its contract to sell fertilizer to Spearman Company, it is hardly conceivable that they would have left the obligation to be inferred from circumstances, when they could have made it perfectly plain in the beginning by written contract. Except in cases of fraud or mistake, the courts will rarely infer from circumstances that the obligations of a contract of sale were assumed by one not a party to it, when the question of liability of such person could have been settled at the inception of the contract by a demand that he sign it.

Affirmed.